# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**AT CLARKSBURG**

| | |
|---|---|
| BIOGEN INTERNATIONAL GMBH and BIOGEN MA INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:17-cv-116-IMK ) |
| MYLAN PHARMACEUTICALS INC., | ) ) |
| Defendant. | ) ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MYLAN PHARMACEUTICALS INC.'S MOTION *IN LIMINE***
**TO EXCLUDE UNDISCLOSED THEORY TO REBUT INVALIDITY**

# TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '514 patent | U.S. Patent No. 8,399,514 (issued Mar. 19, 2013) |
| Ex. 1 – 4 | ECF Nos. 301-2–5, Exhibits 1 – 4 attached to the Decl. of Courtney M. Prochnow |
| Ex. 5 | Exhibit to the Declaration of Michael A. Chajon in Support of Reply Memorandum of Law in Support of Mylan's Motion *in Limine* to Exclude Undisclosed Theory to Rebut Invalidity |
| Kappos References | Prior art references describing Biogen's dimethyl fumarate Phase II trial lead by Dr. Ludwig Kappos |
| Mot. | ECF No. 301, Mylan Pharmaceuticals Inc.'s Motion *In Limine* to Exclude Undisclosed Theory to Rebut Invalidity |
| Opp. | ECF No. 314, Corrected Plaintiffs' Opposition to Defendant's Motion *In Limine* to Exclude Undisclosed Theory To Rebut Invalidity |
| Opp. Ex. | ECF No. 312-3–7, Exhibits 1 – 5 attached to the Decl. of John Nappi |

Mylan moved *in limine* (Dkt. No. 301) to exclude Biogen from unfairly asserting an eleventh-hour argument that the Kappos References are solely the work of the inventor, Gilmore O'Neill, to try to undermine their prior-art status under 35 U.S.C. § 102(a). In response, Biogen made unforeseeable arguments that are wrong on both the law and facts. The bottom line is Biogen shirked its discovery obligations, Mylan would be prejudiced if Biogen were allowed to present its new theory at trial, and that prejudice cannot be cured.

Biogen first contends Mylan has the burden to establish the Kappos References are prior art, meaning—in Biogen's view—that Biogen had no duty in discovery to disclose its rebuttal argument. Opp. 1–2. But Mylan has throughout this litigation asserted the Kappos References are prior art under § 102(a). If Biogen challenges their prior-art status, Biogen carries the burden. *In re Katz*, 687 F.2d 450, 455 (C.C.P.A. 1982) (the inventor must "provide a satisfactory showing which would lead to a reasonable conclusion that he is the sole inventor"); *Eli Lilly & Co. v. Teva Pharm. USA, Inc.*, 657 F. Supp. 2d 967, 1013 (S.D. Ind. 2009) ("[The patentee] must establish that the relevant portions . . . describe 'the applicant's own work' . . . ."), *aff'd*, 619 F.3d 1329 (Fed. Cir. 2010). Moreover, the contingent nature of Biogen's argument does nothing to excuse Biogen's failure to comply with its discovery obligations. Mylan served an interrogatory directed specifically to Biogen's invalidity rebuttal arguments. Biogen responded to it by disclosing several other supposed rebuttals (*e.g.*, distinguishing and antedating prior art), but *no* "own work" theory, making Biogen's current position disingenuous. Ex. 1, 5–6; Ex. 4, 5 n.1, 11–12. And unlike in the *Baltimore Aircoil Co. v. SPX Cooling Technologies Inc.* decision on which Biogen relies, Biogen's "own work" theory does not depend on the underlying facts establishing the references as prior art. *See* No. CCB-13-2053, 2016 WL 4426681, at *20–21 (D. Md. Aug. 22, 2016) (no need for defendant to provide specific evidence of lost profits before plaintiff disclosed bases of damages

argument).

Biogen also compounds its substantive legal error with a procedural one by conflating the merits issues for trial with the evidentiary/discovery issue raised in Mylan's motion. By virtue of their publication dates and listed authors, the Kappos References are prior art on their face. Mylan's sole obligation was to notify Biogen that Mylan would rely on the references, which Mylan did. Opp. 3. Mylan had no prerequisite discovery duty to establish conclusively that the Kappos References are prior art; that is a matter for trial. Once Biogen was on notice of Mylan's reliance on the Kappos References under § 102(a), it was incumbent on Biogen to respond to—at the very least—Mylan's interrogatory asking for all factual bases for Biogen's contrary positions. Instead, Biogen disguised its "own work" theory by doing nothing during discovery to disclose it.

Turning to Biogen's factual misrepresentations: Biogen's reliance on a vague citation to the '514 patent prosecution, IPR, and interference proceedings (in which Mylan was not a party) in its interrogatory responses was insufficient to give Mylan any proper notice. Opp. 2. From those vast records, Biogen quotes only a few lines of O'Neill's deposition transcript in which he merely said: "the key drafter of the [Kappos Phase II] study protocol was myself." Opp. Ex. 2, 60:20–24. But O'Neill never claimed he was the "only" drafter and, of course O'Neill's testimony could not itself provide the corroborating evidence Biogen must present. *See EmeraChem Holdings, LLC v. Volkswagen Group of Am., Inc.*, 859 F.3d 1341, 1346 (Fed. Cir. 2017) ("[C]orroborating an inventor's testimony is a well-established principle in our case law . . . . These concerns particularly arise when uncorroborated testimony comes from an interested person recalling long-past events." (citations omitted)). Had Biogen put Mylan on notice, Mylan certainly would have pursued counter-evidence on this theory, such as testimony from Cara Lansden, whose testimony in that same IPR establishes conclusively that the Phase II study was not O'Neill's "own work." Ms.

Lansden, a member of Biogen's clinical group (and witness here), explained that O'Neill was ***not*** solely responsible for the doses tested in the Phase II trial (a key aspect of the study design):

> Q. Was it within Dr. O'Neill's discretion to decide which doses were included in the Phase IIb study?
> . . .
> A. I would say it was not ***only*** his decision.

Ex. 5, 59:2–20 (emphasis added).[1] Lansden's testimony in this case, the testimony of other witnesses, and several contemporaneous documents further confirms this fact.

Biogen also claims Mylan ignored its vague footnote wherein Biogen purportedly reserved its right to challenge the prior-art status of any publication, but Mylan cited that footnote in its motion and explained how it too failed to give Mylan adequate notice of Biogen's more-detailed theory. Mot. 2 n.2. Biogen also included Kappos 2005 and the Kappos 2005 poster in its opposition (Opp. 1), implying they can be subject to the "own work" argument. But, because those references predate the priority date by more than a year, they are § 102(b) prior art and cannot be removed under an "own work" argument no matter what spin Biogen puts on them.

The Court should dismiss Biogen's arguments and grant Mylan's motion to avoid undue prejudice to Mylan.

---

[1] To compound the prejudice, Biogen has also objected to Mylan adding deposition designations for trial to rebut the "own work" theory, such as Lansden's testimony, ironically because Mylan supposedly "has identified no good cause to change the designations." (ECF No. 315 at 3.) While such evidence would not cure the prejudice and we request that the Court not permit Biogen to present its theory in the first instance, Mylan certainly should not be prohibited from putting on evidence to discount it.

- 4 -

Respectfully submitted this 21st day of January 2020.

*Of Counsel:*

Shannon M. Bloodworth
SBloodworth@perkinscoie.com
Brandon M. White
BMWhite@perkinscoie.com
Michael A. Chajon
MChajon@perkinscoie.com
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Phone: (202) 654-6200
Facsimile: (202) 654-6211

David L. Anstaett
DAnstaett@perkinscoie.com
Emily J. Greb
EGreb@perkinscoie.com
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
Phone: (608) 663-7460

Courtney M. Prochnow
CProchnow@perkinscoie.com
PERKINS COIE LLP
633 W. 5th Street, Suite 5850
Los Angeles, CA 90071
Phone: (310) 788-9900

By:   */s/ **Gordon H. Copland***
Gordon H. Copland
gordon.copland@steptoe-johnson.com
William J. O'Brien
william.obrien@steptoe-johnson.com
Adam S. Ennis
adam.ennis@steptoe-johnson.com
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
Phone: (304) 933-8000

Attorneys for Defendant
MYLAN PHARMACEUTICALS INC.