# EXHIBIT 5

August 24, 2016 Deposition of Cara Christann Lansden
Patent 8,399,514 B2

1

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

COALITION FOR AFFORDABLE DRUGS V LLC; et al.,

Petitioners,

v.

BIOGEN MA, INC.,

Patent Owner
_____

Case IPR2015-01993

Patent 8,399,514 B2
_____

COMPLETE CAPTION ON PAGE 2
_____

DEPOSITION OF CARA CHRISTANN LANSDEN

Wednesday, August 24th, 2016

9:50 a.m.

Finnegan, Henderson, Farabow,

Garrett & Dunner, LLP

Two Seaport Lane

Boston, Massachusetts 02210

Reporter:  Cheryll A. Kerr, RPR, SHR

Registered Professional Reporter

Henderson Legal Services, Inc.

Coalition Exhibit 1055A
Coalition v. Biogen
IPR2015-01993

August 24, 2016 Deposition of CARA CHRISTANN LANSDEN
Patent 8,399,514 B2

2 (Pages 2 to 5)

## Page 2

UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

COALITION FOR AFFORDABLE DRUGS V LLC;
  HAYMAN CREDES MASTER FUND, LP;
  HAYMAN ORANGE FUND SPC - PORTFOLIO A;
  HAYMAN CAPITAL MASTER FUND, L.P.;
  HAYMAN CAPITAL MANAGEMENT, L.P.;
  HAYMAN OFFSHORE MANAGEMENT, INC.;
  HAYMAN INVESTMENTS, LLC;
  NXN PARTNERS, LLC;
  IP NAVIGATION GROUP, LLC;
J KYLE BASS, and ERICH SPANGENBERG,
  Petitioners,
  v.
BIOGEN MA, INC.,
  Patent Owner
_____

  Case IPR2015-01993
  Patent 8,399,514 B2

## Page 3

APPEARANCES:

Carmichael IP, PLLC
BY:  CAROL A. SPIEGEL, ESQ.
8000 Towers Crescent Drive, 13th Floor
Tysons Corner, VA  22182
(703) 646-9249
carol@carmichaelip.com
    Counsel for Petitioners;

Finnegan, Henderson, Farabow, Garrett &
Dunner, LLP
BY:  MICHAEL J. FLIBBERT, ESQ.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
(202) 408-4000
michael.flibbert@finnegan.com
    Counsel for Respondents

Also Present:
Carol Loeschorn, Biogen

## Page 4

                INDEX
EXAMINATION BY                          PAGE
Ms. Spiegel                             5

              EXHIBITS
BIOGEN
FOR ID      DESCRIPTION              PAGE

Exhibit 2079   Declaration of Cara Christann    7
               Lansden
Exhibit 2318   Email Fumapharm Update           16
               October 10, 2003
Exhibit 2309   Email chain CTRB Meeting         31
               regarding BG-12/MS dated
               February 19, 2004
Exhibit 2316   Email to Cara Christann          43
               Lansden dated July 6, 2006
Exhibit 2310   Redacted Clinical Trial Review   54
               Board Meeting Agenda, Item:
               Meeting Minutes dated February
               19th, 2004
Exhibit 2255   Redacted e-mail, BG-12 IND       79
               Hold Response dated May 1st,
               2006
Exhibit 2131   Redacted BG-12 MS Clinical       81
               Development Team Minutes dated
               May 17th, 2006
Exhibit 2115   Redacted BG 00012 SMT Kickoff    83
               Meeting dated May 2006
Exhibit 2126   Email chain with top email       85
               from Gilmore O'Neill

## Page 5

CARA CHRISTANN LANSDEN,
called as a witness, having been duly
sworn, was examined and testified
as follows:
    THE SHORTHAND REPORTER:  Please state
your full name and your address for the
record.
    THE WITNESS:  Cara Christann Lansden.
My address is 145 Boardman Avenue,
Melrose, Massachusetts 02176.
    THE SHORTHAND REPORTER:  Thank you.
Please proceed.

        DIRECT EXAMINATION
        BY MS. SPIEGEL:

    Q.   Okay.  I'm with Carmichael IP Law Firm,
and I will be asking you a series of questions here
today.
    I want you to answer them to the best of your
ability.  If there is something about the way I
phrase a question that you don't understand, just
say so, and I will try and rephrase it or restate
it.
    If you need a break, we can take one at any

August 24, 2016 Deposition of Cara Christann Lansden
Patent 8,399,514 B2

16 (Pages 58 to 61)

---

58

1  exhibit. Okay?
2  A.  (Nodding).
3  Q.  The first bullet point says, "Dosing
4  emerged as the most critical issue."
5  Was that what you remember as well?
6  A.  I recall there was a lot of discussion on
7  the different options which had different doses.
8  Q.  Do you know why Option 2 appeared
9  confusing to some CTRB members?
10 A.  I do not recall.
11 Q.  Do you know why commercial
12 representatives were not in favor of a 240 milligram
13 dose vis-a-vis the marketing strategy of a
14 720 milligrams dose under development for psoriasis?
15 A.  No, because their favorite dose contained
16 480 mgs per day.
17 Q.  Do you remember why regulatory
18 representatives were concerned that bypassing a
19 240 million dose might raise questions with
20 regulatory agency reviewers?
21 A.  No, I do not recall.
22 Q.  Do you know if and why research
23 representatives felt that a true dose ranging study
24 was only reflected in Option 3 or possibly adding a
25 120 milligram arm onto Option 1?

---

59

1  A.  No, I do not recall.  Long time ago.
2  Q.  Was it within Dr. O'Neill's discretion to
3  decide which doses were included in the Phase IIb
4  study?
5  A.  Could you define how you are saying
6  "discretion"?
7  Q.  Did he have a say-so?  Was it his
8  decision?
9  A.  I would say it was not only his decision.
10 Q.  Would the same be true for a Phase III
11 study?  It was not his -- it -- the -- the decision
12 of which doses to be included in the Phase III study
13 was not solely Dr. O'Neill's decision; is that
14 correct?
15 A.  I think that there is a difference in
16 Phase II and Phase III in how study design is
17 approached, so is it solely Dr. O'Neill's decision?
18 No, but I would also say that he has more of an
19 influence in Phase III on that front than he would
20 in a -- in this Phase II.
21 Q.  So would it be fair to say that the
22 ultimate dose selection was subject to approval by
23 the CTRB and other management at Biogen, then?
24     MR. FLIBBERT:  Objection to form.
25 BY MS. SPIEGEL:

---

60

1  Q.  Was dose selection subject to approval by
2  the CTRB and other management at Biogen?
3      MR. FLIBBERT:  Same objection.
4      (Pause)
5  BY MS. SPIEGEL:
6  Q.  Did the CTRB and other management at
7  Biogen have the final decision as to which doses
8  were to be included in clinical trials for MS?
9  A.  I don't know who made those decisions --
10 Q.  Okay.
11 A.  -- or who had the authority to make all
12 of those decisions.
13 Q.  In the fourth bullet point, it says, "BID
14 dosing was discussed, and it was thought that this
15 dosing regimen was beneficial on many different
16 levels."
17     Do you remember any of the beneficial aspects
18 of BID dosing that was discussed?
19 A.  No, I do not.
20 Q.  So despite the fact that BID dosing was
21 discussed and thought beneficial, there was no BID
22 dosing included in the Phase IIb study, correct?
23 A.  That is correct.
24 Q.  And Option 3 was ultimately approved for
25 the Phase IIb study; is that correct?

---

61

1  A.  That is correct.
2  Q.  And Option 3 did not include a
3  480 milligrams per day dosing arm; is that correct?
4  A.  That is correct.  It was not in Option 3.
5  Q.  Were --
6      Do you know if any of the patients were given a
7  dose of 480 milligrams per day as part of the Phase
8  IIb study?
9  A.  Not per protocol.
10 Q.  Okay.  In other words, BG --
11     MS. SPIEGEL:  Strike that.
12 BY MS. SPIEGEL:
13 Q.  In other words, Biogen never drafted a
14 Phase IIb protocol that included patients receiving
15 480 milligrams per day, did it?
16 A.  It was not the C-1900 study that would
17 include a 480 mg per day dose in their Phase IIb.
18 Q.  So Biogen chose to prioritize testing a
19 720 milligrams per day dosage over a 480 milligram
20 per day dosage in Phase IIb study, correct?
21 A.  I would not phrase it as "prioritize."
22 There was no indication or discussion of
23 prioritizing 720 mgs per day.
24 Q.  Nonetheless, the Phase IIb study
25 contained a 720 milligram per day dosing arm and did

---

98

1  trial?
2      A.   Could you be specific by what you mean by
3  "approved"?
4      Q.   It was the final clinical protocol.
5      A.   The -- I don't think I was on the team
6  when the final clinical protocol was approved, so I
7  don't think I can speak to that.
8      Q.   Okay.
9      In paragraph 52 of your declaration, you stated
10 that you were "Still exposed to information related
11 to BG-12 after you left the BG-12 program in
12 July 2006."
13     When did you stop receiving information about
14 BG-12?
15     A.   General information that all program
16 managers -- clinical program managers -- received on
17 distribution lists I would continue to get, and they
18 would have general status type of updates for BG-12.
19     So for as long as I was a program manager,
20 there was general information about BG-12 that I was
21 copied on.
22     Q.   So that would include up to the time that
23 you left Biogen in 2013?
24     A.   No.  I was not a program manager --
25     Q.   So would --

99

1      A.   -- for all of that time.
2           (Pause)
3           THE WITNESS:  2007.
4  BY MS. SPIEGEL:
5      Q.   2007?
6      Well, in 2007, you changed from a program lead
7  to a senior manager of clinical operations, so that
8  would be --
9      A.   Changing into the line management role.
10     Q.   So that's when you stopped receiving
11 information on BG-12?
12     A.   That's when I stopped receiving regular
13 information that all program managers would receive
14 on BG-12.
15     I would still hear some information on BG-12 in
16 general meetings where they did status updates or
17 from people on my -- who reported to me that worked
18 on the BG-12 studies.
19     Q.   But you didn't receive formal
20 communications, internal memos or --
21     A.   No.  I would not.
22     Q.   It was just chat?
23     A.   Yes.
24     Q.   Okay.  I have two last questions.
25     A.   Okay.

100

1      Q.   At any time during the breaks today, did
2  you discuss your testimony with counsel?
3      A.   No, I did not.
4      Q.   Did you overhear any discussions
5  concerning your testimony?
6      A.   No, I did not.
7           MS. SPIEGEL:  Thank you.
8           THE WITNESS:  Thank you very much.
9           MR. FLIBBERT:  I have no questions.
10    Thank you.
11          (Thereupon, the deposition was
12    concluded at 1:52 p.m.)
13          (The exhibits were retained by the
14    shorthand reporter to be attached to the
15    transcript.)

101

1           CERTIFICATE OF REPORTER
2      I, Cheryll Kerr, a Registered Realtime Reporter
3  and Notary Public in and for the Commonwealth of
4  Massachusetts, the officer before whom the
5  proceedings were taken, hereby certify that the
6  foregoing transcript is a true and accurate record
7  of these proceedings; that said proceedings were
8  taken in stenotype by me on the 24th day of August
9  2016, commencing at 9:50 a.m., ending at 1:52 p.m.
10     I further certify that present on behalf of
11 Coalition for Affordable Drugs V LLC, et al. was
12 Carol A. Spiegel, Esq., of Carmichael IP, PLLC; and
13 on behalf of Biogen MA Inc. was  Michael J. Flibbert,
14 Esq., of Finnegan, Henderson, Farabow, Garrett &
15 Dunner, LLP.
16     I further certify that I am not related to, nor
17 associated with any of the parties or their
18 attorneys, nor do I have any disqualifying interest,
19 personal or financial, in the actions within.
20     Signed this 24th day of August 2016, at Suffolk
21 County, Massachusetts.
22
23          _____
24               Cheryll Kerr, RPR, SHR
25 My commission expires:  December 20, 2020

```
                                                  102
 1           ACKNOWLEDGMENT OF DEPONENT
 2
 3       I, _____, do hereby
 4   acknowledge that I have read and examined the
 5   foregoing testimony, and the same is a true, correct
 6   and complete transcription of the testimony given by
 7   me, and any corrections appear on the attached Errata
 8   Sheet signed by me.
 9
10
11   _____   _____
12      (DATE)           (SIGNATURE)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

# ERRATA SHEET FOR THE TRANSCRIPT OF:

Caption: Coalition for Affordable Drugs V LLC, et al. v. Biogen MA Inc.
Deponent: Cara Christann Lansden
Dep. Date: August 24, 2016

I wish to make the following changes for the following reasons:

| Pg. | Ln. | Now Reads | Should Read | Reasons Therefore |
|---|---|---|---|---|
|  |  | Please see attached sheet. |  |  |

_____
SIGNATURE OF THE WITNESS

this __15__ day of __SEPTEMBER__, 20__16__.

Page 48 of 50

## ATTACHMENT TO THE ERRATA SHEET FOR THE TRANSCRIPT OF THE DEPOSITION OF CARA C. LANSDEN, AUGUST 24, 2016

I wish to make the following changes for the following reasons:

| Pg. | Ln. | Now Reads | Should Read | Reasons Therefore |
|---|---|---|---|---|
| 35 | 10 | BID daily | TID daily | typographical error |
| 35 | 16 | BIG per day | BID per day | typographical error |
| 36 | 9 | BID 12 per day | BG-12 per day | typographical error |
| 39 | 12-13 | that the we | that we | typographical error |
| 43 | 10 | for me | from me | typographical error |
| 55 | 20 | phase to be | Phase 2b | typographical error |
| 63 | 1 | BIG | Biogen | typographical error |
| 65 | 12 | BG | BG-12 | typographical error |
| 66 | 8 | labs' feasbility | labs, feasibility | typographical error |
| 68 | 12-13 | were provided with updates to the BG CDT | provided updates to the BG-12 CDT | typographical error |
| 71 | 18 | different endpoints, | Different endpoints: | typographical error |
| 82 | 25 | listed on | listed in | typographical error |
| 84 | 3-4 | active placebo in reference | active, placebo and reference | typographical error |
| 84 | 6 | active placebo | active, placebo | typographical error |
| 84 | 8 | That's the ones | Those are the ones | typographical error |
| 84 | 8-9 | that were the way | that was the way | typographical error |
| 86 | 17-18 | was copy | was copied | typographical error |
| 89 | 1 | of | on | typographical error |
| 90 | 20 | 109-MS | 109-MS-301 | typographical error |
| 96 | 3 | the | then | typographical error |
| | | | | |



Page 49 of 50

102

ACKNOWLEDGMENT OF DEPONENT

I, CARA C. LANSDEN, do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me, and any corrections appear on the attached Errata Sheet signed by me.

15 SEP 2016
(DATE)           (SIGNATURE)