1               UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF WEST VIRGINIA

3  Biogen International GMBH
    and Biogen MA, Inc.,

4

5       Plaintiffs,

6             vs.              CIVIL ACTION NO.

7                         1:17-cv-116

8  Mylan Pharmaceuticals,
    Inc.,

9       Defendant.

10                   - - -

11                 **TRANSCRIPT**

12    of proceedings had in the telephonic status conference of

13  the above-styled action on February 5, 2020, before Honorable

14  Irene M. Keeley, District Judge, at Clarksburg, West Virginia.

15                   - - -

16    APPEARANCES:

17    On behalf of the Plaintiffs:

18    James B. Monroe
      Finnegan, Henderson, Farabow, Garrett & Dunner, LLP

19    901 New York Avenue, NW
      Washington, D.C.   20001

20    202.408.4000

21    On behalf of the Defendant:

22    Shannon M. Bloodworth
      Perkins Coie, LLP

23    700 13th Street, N.W., Suite 600
      Washington, D.C.  20005

24    202.654.6206

25  APPEARANCES CONTINUED ON NEXT PAGE

1          On behalf of the Defendant (cont'd)

2          David L. Anstaett
           Perkins Coie, LLP
3          33 East Main Street, Suite 201
           Madison, WI  53703
4          608.663.5408

5          Gordon H. Copland
           Steptoe & Johnson, PLLC
6          400 White Oaks Boulevard
           Bridgeport, WV  26330
7          304.933.8162

8

           Proceedings recorded utilizing realtime translation.
9          Transcript produced by computer-aided transcription.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    Wednesday Afternoon Session,

2                    February 5, 2020, 4:30 p.m.

3                           - - -

4        THE COURT:  Hello.  This is Judge Keeley.  Do I have the

5    parties on the line?

6        MR. MONROE:  Yes, Your Honor.

7        THE COURT:  All right.  Thank you.  I'm conducting this

8    from the courtroom because I just finished a sentencing.  If

9    you have any trouble understanding me or hearing me, please let

10   me know, because I'm speaking into a microphone rather than

11   directly into the phone.

12       All right.  So this is Biogen versus Mylan, and we're here

13   for the purpose of receiving an update from the parties

14   following their receipt of the decision at the PTAB today of

15   Mylan's IPR.  Who wishes to speak?  Note your appearance as you

16   address me, please, so the record will be clear.

17       MR. COPLAND:  Your Honor, this is Gordon Copland for

18   Mylan.  Also on the line are Shannon Bloodworth and Dave

19   Anstaett.  I think Shannon Bloodworth will give you a short

20   update on where the parties are in discussions in light of the

21   PTAB decision.

22       THE COURT:  Okay.  Ms. Bloodworth, I'm happy to hear from

23   you.

24       MS. BLOODWORTH:  Thank you, Your Honor.

25       The PTAB did issue its decision, as Your Honor is aware,

1    and that decision did not go in Mylan's favor.  Mylan is still

2    considering that decision, obviously, in its future courses,

3    but for the purposes of this trial, the Court will no longer

4    need to reach the issue of 103, and that obviously has a very

5    slimming effect to this trial because we will now have several

6    less witnesses, so I think I would say the trial days will

7    require probably in the range of two instead of the seven that

8    we were currently planning on.

9        The logistics changes a little bit.  Mylan's case in chief

10   now becomes the 112 case, and with that we will be calling a

11   couple of the witnesses on our "may call" list, particularly

12   Dr. Katherine Dawson and Dr. O'Neill.  We reached out to Biogen

13   to let them know that was our intention.  We have not heard if

14   they will be bringing them to trial at that request.  And so --

15   and we also have some dep designations that will now form the

16   basis for Dr. Greenberg's 112 testimony.

17       So what we had proposed was that we would -- I think in

18   all -- I think to make this very efficient and try to have an

19   orderly presentation of evidence, we would resume court on

20   Friday morning and play those dep designations that we were

21   going to take out of order in an awkward way when we were

22   having Dr. Greenberg appear all at once because we were trying

23   to call witnesses at one time, and then obviously I think

24   Biogen will have Dr. Wynn in rebuttal.  And so depending upon

25   the adverse witnesses that we would now like to call and

1   whether or not they're coming to trial, again, is a much more

2   efficient case at this point, and we just think taking until

3   Friday morning to figure out all these issues is a more

4   efficient way to proceed.

5       THE COURT:  You're suggesting that we not have trial

6   tomorrow.

7       MS. BLOODWORTH:  Yes, Your Honor.  I think we will have --

8   if Your Honor does want to have some testimony tomorrow, I

9   think we will have Dr. Lukashev designations.

10      MR. MONROE:  Your Honor, this is James Monroe on behalf of

11  Biogen, if I may just comment briefly.  We did respond --

12      THE COURT:  Excuse me.  May I just inquire of

13  Ms. Bloodworth if she's finished.  I think we should allow her

14  to conclude her remarks before I hear from you.  I understand

15  you're anxious to chime in on this, but Ms. Bloodworth, have

16  you finished?

17      MS. BLOODWORTH:  Yes, Your Honor.  I think I was just

18  saying, again, I was trying to stretch efficiency but also

19  trying to -- we -- I think the real outstanding question is

20  whether or not Biogen will allow us to call those adverse

21  witnesses live, and then again the dep designations, which,

22  again, we can now orderly present the evidence on the 112 case

23  by having them played.

24      THE COURT:  Okay.  So I understand the 103 issues of

25  obviousness have been decided, and they've been decided in

 1    Biogen's favor, and the 112 issues remain in the case.  So that

 2    burden of going forward remains on Mylan, correct, their

 3    defenses?

 4         MS. BLOODWORTH:  Yes, Your Honor.  We will still be in our

 5    case in chief on 112 issues.

 6         THE COURT:  Okay.  Thank you.

 7         Now I'm happy to hear from Biogen.

 8         MR. MONROE:  I apologize, Your Honor.  I did not intend to

 9    interrupt Ms. Bloodworth.

10         We have responded to the inquiry.  We sent a response

11    around 3:30.  We noted that we agreed that Mylan was estopped

12    from moving forward on the 103 case and could only proceed on

13    112.  We did ask if they would agree to have a stipulation to

14    that.  Our client would like to ensure that there's a written

15    record that there's a stipulation to estoppel that's by

16    statute, and we also had asked if they would agree to strike

17    the testimony -- in that stipulation, agree to striking the

18    testimony of Dr. Greenberg that was presented on Tuesday other

19    than his qualifications, Your Honor, given that all of that

20    testimony was directed to the 103 issues.

21         We also noted that we disagreed with the need to recess

22    until Friday.  Dr. Greenberg was in the middle of his direct,

23    and he was about two-thirds of the way through and very close

24    to the 112 issues, and if this decision had not come down, he

25    would have continued to testify in due course and gone through

1   completely and all of his 112 arguments, and therefore we don't

2   think there's a reason to read more witnesses now and start

3   playing deposition designations when he's already been in the

4   course of his testimony.  We do agree he should take up his

5   testimony at that point in the slide set which was about the

6   112 issues.

7       And so we propose that for efficiency, to ensure we're

8   continuing on track, is that we would continue tomorrow morning

9   as planned, with him continuing, but only on 112, and then we

10  would agree to call -- we could start our case in chief, our

11  case in rebuttal, or -- and call Dr. Wynn.

12      And we had proposed -- we don't disagree with the concept

13  that they'd like to go ahead and do their deposition

14  designations, but we thought it might make sense, for the

15  reasons that Ms. Bloodworth noted, to give the parties a little

16  more time so Mylan can narrow its deposition designations so

17  they're limited to the 112 issues, and then we can -- we can

18  confer tomorrow about those issues so that on Friday those

19  deposition designations could be played following the hearing

20  from Dr. Wynn on the 112 issues.

21      With respect to the witness issues, we also noted that in

22  view of the decision that now removes the 103 issues from this

23  case that we would not be calling live Dr. O'Neill, Dr. Dawson,

24  Dr. Thisted, Dr. Duddy, Dr. Brundage, or Mr. Jarosz.  None of

25  those witnesses are now necessary in view of the IPR decision,

1    and we don't believe any of their testimony has any relevance

2    to the 112 issues.

3         To the extent that Mylan is noting that it wants to call

4    Dr. O'Neill and Dr. Dawson, there was a provision set forth in

5    the pretrial order that if they wanted to call them as part of

6    their case in chief, that they could do so by designations, if

7    we did not call them, and that was specifically in case of a

8    situation like this.  And so we are now not calling any of

9    those witnesses and instead limiting our presentation in our

10   rebuttal case to the narrow issue of 35 U.S.C. 112.

11        So we think it makes sense to just proceed as originally

12   planned, with Dr. Greenberg finishing his testimony, and then

13   we will have Dr. Wynn and then we'll go over till Friday and

14   have deposition designations, and then if Your Honor wants

15   closings, then that also.

16        So that would be our response to Mylan.  And I know we

17   responded at 3:30 to their email about 2:45, so they may not

18   have had a chance to digest all of that yet, but that's what

19   Biogen would propose to just keep the case moving.

20        THE COURT:  Ms. Bloodworth, do you wish to be heard again?

21        MS. BLOODWORTH:  Yes, Your Honor.  And I think my specific

22   request and question was whether or not, if they're not

23   intending to call Dr. O'Neill or Dr. Dawson, but whether or not

24   they will bring them to trial live, because as Your Honor

25   heard, if they do not, we have to do the dep designations and

1   exchange it with plaintiff and get those ready to play.

2       And limiting a case takes a lot of work, and I don't think

3   it's -- this is our case in chief, and we don't want to present

4   our evidence in our case in chief in the manner in which

5   Mr. Monroe wants us to.  You know, this testimony does -- it

6   was -- like I said before, even when we were going to do it on

7   Wednesday, it was awkward, and Your Honor can see the slides we

8   had.  We were going to try and call out potential testimony

9   from witnesses for Dr. Greenberg to be able to put in his

10  opinions.

11      Now we are, as Mr. Monroe acknowledged, dropping several

12  witnesses.  We have the -- we have to take a day to properly

13  order the presentation of the evidence, and we think it's

14  efficient and also the order in which Mylan would prefer to put

15  in its case in chief in to the Court.

16      And a half day adjournment I understand is a request, or a

17  full day is a request, but again, the parties were anticipating

18  a seven-day trial, and we certainly slimmed it down quite

19  substantially.

20      THE COURT:  Are either Dawson or O'Neill, or both of them,

21  still employed by Biogen?

22      MR. MONROE:  Dr. O'Neill has not been employed by Biogen

23  for a while and is not under its control.  Dr. Dawson is

24  employed by Biogen and given the testimony is about the 103

25  issues, we're not calling her as a witness and don't believe

1    she should be called live to come here to testify to what

2    issues which we were intending to raise, Your Honor, during

3    this call.

4        We were also going to propose that we would like to file a

5    motion in limine with respect to them raising the items that

6    were in -- the topics on the 112 issue that were in the opening

7    slides on that issue.  As I noted during my opening, Your

8    Honor, those issues are -- those facts are irrelevant to what

9    the patent teaches to the skilled artisan; and secondly, they

10   did not have that type of data or that type of information as a

11   basis prior to their opening slide.

12       THE COURT:  Okay.  Just a minute.  I'm not expanding this

13   discussion to the motion in limine on who's going to testify

14   about what.  That's not happening right now.  And I will tell

15   you again, as I did yesterday, as a trial judge, I'm looking

16   for live testimony where I can get it.  So if Dr. Dawson was

17   planning to be here anyway and now you've just decided as a

18   matter of strategy not to bring her in, it will be helpful to

19   me in making the decision on your argument to have seen the

20   witness live.

21       If you choose not to bring her in, I'll certainly include

22   that in the calculation of my weight, the weight that I give to

23   her testimony and your rebuttal, and also any motion in limine

24   that you might be filing.

25       I gather that Dr. O'Neill is not under your control and on

1   that, Ms. Bloodworth, I think you're at a stalemate on that

2   one.  How can I order Biogen to bring in someone who's not an

3   employee and who is not controlled by Biogen at this time?

4       MS. BLOODWORTH:  I'm not asking for that.  I'm simply

5   asking for Biogen, if they would voluntarily bring Dr. O'Neill

6   to trial.  If they are not, which I hear they are not intending

7   to call him any longer, then we will designate Dr. O'Neill's

8   deposition testimony in light of him appearing live, and we

9   need to start that process because we don't have that dep

10  designation done yet because he was going to be appearing live.

11      THE COURT:  Certainly.  And I would just remind, again,

12  both sides, the trial judge really likes to see and hear live

13  testimony.  It's much more compelling.  And I would certainly

14  support any attempt by Biogen to get Dr. Dawson in here.  I've

15  read through the excerpts of her deposition that were used

16  previously in the motions, and there's a lot lost on the page

17  that I'd like to see in person.

18      What's Biogen going to do about that?

19      MR. MONROE:  Well, I was going to inquire as to her

20  availability, Your Honor.  We had indicated that she would be

21  called as a witness depending on the outcome of the IPR,

22  because they're issues related to the 103 issues.

23      THE COURT:  When were you planning to call her had you

24  lost on the IPR?  Let's go at it that way.

25      MR. MONROE:  She wasn't going to be until probably next

1   week.

2        THE COURT:  Well, I've got the whole week reserved for you

3   next week, and this is a trial to the Court, so if you all want

4   to interrupt the trial and come back for that purpose next

5   week, I'm here.

6        MR. MONROE:  Your Honor, we will check on her availability

7   and obviously, with our client, on that issue.  The Dr. O'Neill

8   issue, I know we're unable to bring him.

9        THE COURT:  But you were going to bring him had the IPR

10  not gone your way.

11       MR. MONROE:  We had asked about his availability and were

12  hoping for him to be here this week.

13       THE COURT:  Okay.

14       MR. MONROE:  But we predicated that on the obviousness.

15       THE COURT:  All I'm going to suggest is -- this is

16  probably directed more to Biogen than it is to Mylan at this

17  point.  Just remember I'm the finder of fact.  I make the

18  decision in this case.  And to the extent that the testimony

19  comes in live and it comes in efficiently and it comes in in an

20  economically advantageous way to everybody's time, that's

21  certainly something that I view as worthwhile goals in a

22  litigation.  If it can't happen that way because Dr. Dawson is

23  not available till next week, then we'll recess and we'll come

24  back when she is available.

25       Since you all are from out of town and one never knows what

1    the weather is going to be in West Virginia in February, I

2    think the sooner you can get her in, the better for all of us.

3        And with regard -- moving on then to the Greenberg issue,

4    what, Ms. Bloodworth, is the reason you would like to delay him

5    and not put him on tomorrow?

6        MS. BLOODWORTH:  Your Honor, first, that I'd like to play

7    Dr. Lukashev's deposition live in the courtroom because he --

8    it is a very critical piece of our 112.  He is the named

9    inventor on the patent.

10       The second is I'm going to be devoting a lot of my energy

11   to slimming down this case, and it is, as you know, a large

12   amount of decisions and issues that need to go on.  And this

13   has been a very difficult day for Mylan, and I don't want --

14   that's not on the Court.  It's on us.  But having a half a day

15   where we can reach -- makes us more efficient in putting

16   Mylan's case in chief on in 112 would be, I think, very

17   beneficial.  And we would start with Lukashev's dep

18   designations Thursday afternoon and I think we will have

19   witnesses completed, all of the witnesses, even if Biogen

20   brings both O'Neill and Dr. Dawson, finished by Tuesday.

21       THE COURT:  So what would we be doing tomorrow morning?

22       MS. BLOODWORTH:  Tomorrow morning, Your Honor, the parties

23   would be meeting and conferring and working to define the

24   evidence for the 112 case and prepare it.

25       THE COURT:  And where would you be doing that?

1      MS. BLOODWORTH:  We'll be doing it by phone.  I'm

2  currently at the Holiday Inn -- Hilton Garden Inn in

3  Clarksburg, but we'll be doing it by phone.  We exchanged dep

4  designations.  We have it set out where we bring counters, they

5  counter, and we can work out objections, and then we have to

6  make the reports and the videos.

7      And then once we understand what that evidence will look

8  like that will be in, depending on the evidence, I will then

9  understand the definitive scope of Dr. Greenberg's 112

10  testimony.

11      THE COURT:  All right.  Hold on a second.  Could both

12  parties hold on for just a moment.

13      MS. BLOODWORTH:  Of course.

14      (Discussion held off the record.)

15      THE COURT:  All right.  I just spoke with the clerk in

16  order to determine space availability here at the main

17  courthouse tomorrow.  I foresee, just based on the way things

18  have worked out in this case before today, that if I don't

19  bring you all in to the courthouse to have you work these

20  issues out tomorrow morning, we'll never get to testimony

21  tomorrow afternoon and we'll spend a lot of the time on what

22  would be possibly needless motion practice.  If you're here in

23  the courthouse in conference rooms, walking down the hall,

24  talking to each other, and I'm across the hall in my chambers,

25  able to make rulings on a momentary basis as the need arises,

1    that's what I want to do.

2        I'll let each side react to that.  In other words, if we're

3    not going to have testimony in the morning, I want you here at

4    the main courthouse in conference rooms and be across the hall

5    and we're going to get all issues resolved.  That's my goal.

6        MR. MONROE:  Your Honor, this is James Monroe on behalf of

7    Biogen, and we obviously agree with trying to expedite the

8    resolution of these issues.  I would note that if we had -- if

9    we had gone late on Tuesday, just for another hour and a half,

10   as Ms. Bloodworth noted, Dr. Greenberg would have finished all

11   his testimony.

12       THE COURT:  I understand your argument.  I've taken it

13   into account and I'm moving on and trying to reach a rational

14   decision that will take into account the needs and the wants of

15   both sides.  So it's not necessary to repeat that argument.  I

16   already heard it.

17       The fact is we didn't finish Dr. Greenberg and we now have

18   to figure out how to do this, and I'm trying to do that.  So my

19   question to you -- and it's the only one you need to answer --

20   is are you and your team available to be here in the main

21   courthouse tomorrow morning with Mylan here as well to thrash

22   out these issues so that we can begin the evidence at 1:00,

23   which would be reading in or listening to the deposition

24   testimony of Dr. Lukashev; yes or no?

25       MR. MONROE:  Yes.

1        THE COURT:  Thank you.

2        MS. BLOODWORTH:  Yes, Your Honor.

3        THE COURT:  What's Mylan's position?

4        MS. BLOODWORTH:  Yes, Your Honor.

5        THE COURT:  All right.  So I'll have all parties up here

6   at 8:30 tomorrow morning, prepared to go forward and to reach

7   an agreement on how to proceed.  To the extent that you cannot

8   reach an agreement, we'll have a hearing in my chambers, get

9   the issues resolved, move on to the next issue, and then we'll

10  resume the evidence at 1:00.  Everyone understands that?

11       MS. BLOODWORTH:  This is Shannon Bloodworth for Mylan.

12  Yes.

13       MR. MONROE:  James Monroe for Biogen.  Yes.

14       THE COURT:  And Lukashev, I assume, is going to take all

15  afternoon?

16       MS. BLOODWORTH:  We have two dep designations that we'd

17  like to play.  One is Lukashev.  He is -- my understanding,

18  that deposition takes about two hours.  And then the second one

19  I think is about be a hour, hour and a half, Your Honor.

20       THE COURT:  So then we'd be adjourning probably before

21  5:00 and the next morning would begin with the continuation of

22  Dr. Greenberg's testimony.  Is that how I understand it?

23       MS. BLOODWORTH:  Yes, Your Honor.

24       THE COURT:  And how long would that take?  I realize

25  you're thinking through those things, or Mylan is,

1   Ms. Bloodworth, but how long do you expect it to take?  Best

2   estimate.  Not holding you to it.

3        MS. BLOODWORTH:  One and a half to two.

4        THE COURT:  Okay.  So even with extensive

5   cross-examination, we're likely to be finished early on Friday.

6   Do you have another witness you would be calling after

7   Greenberg, or if Dawson can't be here, then are you going to

8   read or view -- would we view O'Neill's testimony?

9        MS. BLOODWORTH:  Yes, Your Honor, we will have additional

10  dep designations after Greenberg, depending upon -- at least

11  one more, and depending on the issue of whether or not the

12  witness would be here live or by dep designations, we would

13  have those designations to play.

14       THE COURT:  Do you expect to rest at the conclusion of

15  Friday, or would that be sometime on Monday?

16       MS. BLOODWORTH:  It depends on the witnesses'

17  availability, if they're going to be live or not.  If we're

18  doing dep designations, it might be Monday morning.  Could be

19  by Friday afternoon.

20       THE COURT:  All right.  Then turning to Biogen's case,

21  once Biogen begins, how long would you expect the case to last

22  on the 112 issues?

23       MR. MONROE:  We will be presenting one live witness, Your

24  Honor.  That's Dr. Wynn.  And his direct should take about two

25  hours.

1    THE COURT:  All right.  And will there be deposition

2  excerpts put in the record as well, either by video or reading?

3    MR. MONROE:  There may be narrow ones that are counters to

4  what they present, Your Honor, if the topics that they're

5  trying to raise by deposition designation are not excluded

6  pursuant to the motion in limine.

7    THE COURT:  All right.  Then should I expect that this

8  case, including closing arguments, would conclude by Wednesday

9  afternoon?

10    MR. MONROE:  Most certainly, Your Honor.  Hopefully much

11  sooner than that.

12    THE COURT:  All right.

13    MS. BLOODWORTH:  Yes, Your Honor.

14    THE COURT:  As you know, our court reporter is from the

15  Wheeling point of holding court.  She's got scopists who are

16  doing the dailies, and I think it's important that you all keep

17  in mind that she needs to know what the schedule is going to be

18  so that she can form her own judgment about her schedule and

19  also inform her scopists.  I would hope that maybe tomorrow or

20  no later than Friday you would be able to give her a pretty

21  good estimate on when the case would conclude in total.  Okay?

22    MS. BLOODWORTH:  Yes, Your Honor.

23    MR. MONROE:  Yes, Your Honor.

24    THE COURT:  All right.  Thank you.  Then we'll see you in

25  here tomorrow morning.  And for planning purposes there are --

 1   I think your local counsel can advise that there are courtroom

 2   conference -- courthouse conference rooms, two that would be

 3   available, one for each side.  It's not going to take 25

 4   persons per side, that's for sure.

 5      And the courtroom is going to be used by Judge Kleeh all

 6   day tomorrow, so if there's spillage, I think one thing we

 7   could do, could do a coin toss and see who would get the jury

 8   room, because that's a bigger room and it's not going to be in

 9   use tomorrow.  And then possibly I could let the other side

10   have the two conference rooms on the second floor, and the jury

11   room is also on the second floor.  We might be able to work it

12   out that way so you can bring more of your team.

13      So I suggest bring -- absolutely bring who you need and

14   bring more than who you think you need, if you can limit it to

15   about ten or 12 per side.  I think that would work with the

16   space we have available.  Okay?

17      MR. MONROE:  Thank you, Your Honor.  If I could just ask

18   one question for your preferences, Your Honor, we -- as I noted

19   in the beginning, we were intending, because we had not reached

20   some sort of resolution before this call, to file a motion for

21   estoppel if we couldn't agree upon stipulations, so that there

22   would be a record of the estoppel.  I think it's clear during

23   this call that Mylan is agreeable to the estoppel, but our

24   clients still like a record of that being in effect.

25      And additionally, we have been intending to file a motion

 1    to strike Greenberg's testimony from the first day of the trial

 2    about 103 and a motion in limine to exclude with respect to the

 3    testimony on the issues that showed up the first time in

 4    opening slides.  So I didn't want to file those and surprise

 5    the Court without raising that issue.

 6          THE COURT:  Well, you know, based on my read of the

 7    statute, a stipulation regarding estoppel is probably

 8    unnecessary.  And with regard to the striking of

 9    Dr. Greenberg's testimony on whether explicitly 103 issues,

10    certainly I, as the fact finder, will not be considering those,

11    since I don't have jurisdiction on those issues any longer.

12          If you want to file things that are -- that your client

13    doesn't understand or decides as a matter of law, feel free,

14    but I just think you should recognize that cluttering up the

15    docket with a lot of unnecessary filings is probably not

16    something we need to get into when we have other issues that

17    really do need to get decided.  But you go ahead.  You've got a

18    big team.  You can do what you want.  All right?

19          But if Mylan doesn't agree to your stipulation, I would

20    understand it, given what the statute says.  We all understand

21    what's estopped.  Based on the SAS case, we certainly

22    understand it.  And that's that.  All right.  If there's

23    nothing further -- go ahead.  I'm sorry.

24          MR. MONROE:  I was just going to note on that, the

25    striking of the testimony, it really was not about this case.

1    As you're aware, Biogen's patent faces repeat challenges by

2    repeated parties and the concern was the testimony that should

3    not have been elicited in the first place technically.

4        THE COURT:  Well, in that regard, that's an issue you have

5    to take up elsewhere.  His testimony is on the record here.  It

6    was relevant and permissible material at the time it was taken.

7    It's on the record.  Now that I understand why you want to

8    strike it, which has nothing to do with this case, forget that.

9    I'm not doing that.

10       MR. MONROE:  Okay.  Thank you, Your Honor.

11       THE COURT:  You're welcome.  Take your strategy to the

12   appellate court and see what it says.  This Court stands

13   adjourned.  Thank you.

14       (Proceedings concluded at 5:05 p.m.)

```
 1                       CERTIFICATE
 2      I, Cindy L. Knecht, Registered Professional Reporter and
 3 Official Reporter of the United States District Court for the
 4 Northern District of West Virginia, do hereby certify that the
 5 foregoing is true a and correct transcript of the proceedings
 6 had in the above-styled action on February 5, 2020, as reported
 7 by me in stenotypy.
 8      I certify that the transcript fees and format comply with
 9 those prescribed by the Court and the Judicial Conference of
10 the United States.
11      Given under my hand this 5th day of February 2020.
12                      /s/Cindy L. Knecht
                        _____
13                      Cindy L. Knecht, RMR/CRR
                        Official reporter, United States
14                      District Court for the Northern
                        District of West Virginia
15
16
17
18
19
20
21
22
23
24
25
```